**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED
J.N
SEP 2 5 2009
SEP 25 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT C---

HARVEST FOOD GROUP, INC.,           )
                                    )
                Plaintiff,          )
                                    )
        v.                          )       CIVIL
                                    )
OPTIMUM FOOD GROUP, LLC., BROCK     )       09CV5975
FURLONG, MICHAEL DAHL and           )       JUDGE NORGLE
BARRETT CARLSON, each individually, )       MAG. JUDGE MASON
                                    )
                Defendants.         )

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## APPLICATION FOR TEMPORARY RESTRAINING ORDER

### I. INTRODUCTION

Harvest Food Group, Inc. ("Plaintiff"), has just filed an action to recover $46,424.71, plus further interest, costs and attorneys' fees for perishable agricultural commodities ("Produce") sold to defendants, Optimum Food Group, LLC. (the "Company") and Brock Furlong, Michael Dahl and Barrett Carlson, each individually (collectively, the "Principals")(the Principals and the Company are collectively referred to herein as the "Defendants"). Count I seeks enforcement of the trust imposed on the Defendants' assets under § 5(c)(3) [7 U.S.C. § 499e(c)(3)] of the Perishable Agricultural Commodities Act, 1930, as amended, 7 U.S.C. §§ 499a-499t (2004 & Supp. 2006)(the "PACA"). Plaintiff alleges that the Defendants have dissipated, and are continuing to dissipate, the assets impressed with the statutory PACA trust, thereby harming the rights of the trust beneficiaries such as the Plaintiff.

The Defendants' dissipation and continued dissipation of Plaintiff's trust assets is wrongful and in violation of Plaintiff's trust rights. The PACA requires a Produce debtor in the Company's position to maintain sufficient assets at all times to satisfy the claims of the qualified PACA trust

beneficiaries such as the Plaintiff herein. Accordingly, Plaintiff's action seeks the entry of a Temporary Restraining Order ("TRO") to prevent the Defendants from further dissipating the PACA trust. If the Defendants are not restrained from dissipating the PACA trust, the trust assets will be forever lost to Plaintiff and it will thereby suffer the exact irreparable harm this remedial statute was designed and enacted to prevent.

## II. STATEMENT OF THE FACTS

Plaintiff are sellers of wholesale quantities of Produce. The Defendants are buyers of wholesale quantities of Produce. The Plaintiff sold Produce to the Defendants and the Defendants accepted shipments of Produce from the Plaintiff which have a current aggregate invoice value of $46,424.71. After the inclusion of all sums owing in connection with the transactions, per the USDA regulations, the Plaintiff properly preserved its PACA trust rights for this entire sum.

Despite repeated demands, the Defendants have not paid Plaintiff the balance due on their PACA trust claims and the current aggregate sum of $46,424.71 remains due and owing. (See Affidavit of David B. Block, the President of Plaintiff, attached as Exhibit 1). The Defendants also appear to be unable to pay due to the dissipated condition of the PACA trust *res*. (See Exhibits 1, ¶¶ 12-27). Based on the Company's demonstrated inability to pay its bills (See Exhibit 1, Plaintiff's Affidavit), this situation will effectively prevent the Defendants from satisfying the balances owed to the Plaintiff or any other equally-situated trust beneficiary if allowed to continue dissipating the trust. Id.

Rather than allocating the PACA trust assets to their only rightful purpose, *i.e.*, the payment of the claims of PACA trust beneficiaries such as the Plaintiff, the Defendants have instead been,

2

either voluntarily or against their will, diverting these trust assets to other uses in clear violation of their duties as statutory trustees under PACA.

### III. SUMMARY OF THE PERISHABLE AGRICULTURAL COMMODITIES ACT

Congress enacted the PACA in 1930 to provide a comprehensive scheme for the regulation of traders of fresh fruit and vegetables. "It provides a code of fair play . . . an aid to agricultural traders in enforcing their contracts." 49 Fed. Reg. at 45737. The PACA requires produce buyers to make "full payment promptly" for any produce they purchase. 7 U.S.C. § 499b(4). The PACA protects suppliers of produce by giving rise to civil liabilities in favor of the unpaid seller against buyers who fail to make full payment promptly. 7 U.S.C. § 499e(a); In re Carpenito Bros., 46 Agric. Dec. 486 (1987), aff'd 851 F.2d 1500 (D.C. Cir. 1988). See also Endico Potatoes v. CIT/Factoring, 67 F.3d 1063, 1066-67 (2nd Cir. 1995). An unpaid seller loses the benefit of the trust unless it serves written notice of its intent to preserve trust benefits with the produce buyer within 30 days after payment becomes past due. 7 U.S.C. § 499c(c)(3) (as amended).

In 1984, Congress determined that the increase in nonpayment and delinquent payment by Produce buyers threatened the financial stability of the produce industry. Congress recognized that under the prevailing law "sellers of fresh fruits and vegetables [were] unsecured creditors and receive[d] little protection in any suit for recovery of damages where a buyer ha[d] failed to make payment required by the contract." H. R. Rep. No. 543, 98th Cong. 1 St. Sess. (1983), reprinted in 1984 U.S. Code Cong. & Admin. News, 405, 407. In response, Congress amended the PACA in 1984 to provide further protection to sellers of produce and to establish an express, non-segregated "floating" statutory trust in which a Produce buyer as trustee holds its Produce-related assets in trust

3

as a fiduciary until full payment is made to the unpaid seller/trust beneficiary. 7 U.S.C. § 499e(c);
Frio Ice S.A. v. Sunfruit, 918 F.2d 154, 156 (11th Cir. 1990).

The PACA trust commences by operation of law upon delivery of the Produce and continues
until full payment for the Produce has been made. 7 C.F.R. § 46.46(d)(1), 7 U.S.C. § 499e(c)(2).
Once the seller delivers the Produce, failure of the buyer (as trustee) to maintain trust assets
sufficient to make full payment promptly to the trust beneficiaries is unlawful. 7 U.S.C. § 499b(4).
The trust provisions of the PACA are similar to, and based upon, the trust provisions of the Packers
and Stockyards Act, 7 U.S.C. §§ 181-229 (1980) (the "PSA"). The trust provisions of both Acts are
interpreted similarly, and the courts have looked to the PSA for guidance in interpreting the PACA.
See In re: Fresh Approach, 48 B.R. 926, 931 (Bankr. N.D. Tex. 1985).

The principal benefit of the trust for a Produce seller is that when a buyer fails to pay or
becomes insolvent, the seller is placed first in line among creditors to receive the trust *res*, which
consists of all assets of the debtor unless and until the debtor proves a particular asset was acquired
with something other than the proceeds of the debtor's dealings in Produce. Frio Ice, 918 F.2d at
156. See In re: Monterey House, 71 B.R. 244, 249 (Bankr. S.D. Tex. 1986); Fresh Approach, 51
B.R. at 420-422. The PACA trust *res* serves as a fund from which unpaid Produce sellers can be
assured payment. By operation of trust law, while a buyer of Produce has legal title to the PACA
trust *res*, equitable title remains with the seller of the Produce.

The establishment of the trust occurs upon the commencement of the buyer's buying and
selling of Produce and exists continuously throughout the life of the buyer's business until the sellers
are paid in full. Any assets purchased while the trust is in existence will be assumed to be purchased
with trust assets and will, therefore, become part of the trust fund assets available to satisfy the

4

claims of the qualified unpaid sellers. In re: Atlantic Tropical Market, 118 B.R. 139, 142 (Bankr. S.D. Fla. 1990). When trust assets are commingled with funds not subject to the trust, the trust is impressed upon the entire commingled fund for the benefit of the trust beneficiaries. In re: Gotham Provision, 669 F.2d 1000 (5th Cir. 1982). The PACA was designed to insure that a Produce buyer's secured lender and other third parties do not receive and retain proceeds from the sale of Produce when the buyers's Produce suppliers have not been paid. The USDA has recognized that Congress intended unpaid sellers to recover trust assets that are transferred to third parties including secured lenders. 49 Fed. Reg. 45736 (Nov. 20, 1984). See 44 U.S.C. § 1507.

With respect to any issue of tracing assets, the Atlantic Tropical Market court considered this legislative history when it placed on the buyer the burden to "track the status of the trust fund and to provide evidence of other origin of purchases of assets." Id., citing In re: Al Nagelberg & Co., 84 B.R. 19 (S.D.N.Y. 1988); In re: Fresh Approach, 51 B.R. at 422 ("[s]hould a dispute arise, it will be the buyers' burden to establish which, if any, assets are not subject to the PACA trust."); In re: N. Merberg & Sons, 166 B.R. 567, 570 (Bankr. S.D.N.Y. 1994; In re: Milton Poulos, Inc., 94 B.R. 648, 652-53 (Bankr. C.D. Cal. 1988), aff'd 107 B.R. 715 (9th Cir. BAP 1989) ("the debtor or bankruptcy trustee, rather than the trust beneficiary, is responsible for determining which assets, if any, are not subject to the trust."); Six L's Packing v. West Des Moines State Bank, 967 F.2d 256, 258 (8th Cir. 1992).

In Sanzone-Palmisano Co. v. Seaman Enterprises, 986 F.2d 1010 (6th Cir. 1993), the Court provided a more detailed discussion on the issue of tracing and the policy reasons for placing the burden on the buyer/debtor, recognizing:

5

that in most cases it will be virtually impossible for a PACA debtor to trace the origin of the disputed assets... [However, w]e believe that this is the outcome that Congress intended.

Id. at 1014 (emphasis added). After finding the supplier had established the validity of its PACA trust interest, the Court stated the burden on remand to the district court is on the buyer to:

prove which seized assets were not purchased with funds from the sale of produce. **All of the seized assets that cannot be traced to a non-trust source are part of the trust res and are subject to [supplier's] trust claim.**

Id. (emphasis added.)

The Produce buyer is required to maintain trust assets so that such assets are freely available to satisfy all outstanding obligations to sellers of produce. 7 C.F.R. § 46.46(e). This obligation is plainly set forth in the PACA statute as follows:

*[a]ny act or omission* which is inconsistent with the buyer's responsibility to maintain trust assets, including any act which results in the diversion of trust assets or *which prejudices the ability of unpaid sellers to recover money owed, is unlawful.*

7 U.S.C. § 499(b)(4) (emphasis added). The officers of a corporation responsible for its financial dealings are personally liable to PACA trust creditors for any dissipation of the Plaintiff's PACA trust assets by virtue of their directing the corporate trustee to breach its fiduciary duties. Sunkist Growers v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997) (agreeing with prior district court decisions, the Court stated: "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act.").

## IV. JURISDICTION

Injunctive relief is necessary and proper under the PACA to prevent the dissipation of a seller's interest in PACA trust assets, and the District Courts have jurisdiction to entertain injunctive

6

actions by both the USDA and private unpaid Produce sellers with PACA trust rights. Frio Ice, 918 F.2d at 158; Gullo Produce Co. v. Jordon Produce Co., 751 F. Supp. 64 (W.D. PA. 1990); Debruyn Produce Co. v. Olympia Produce, 734 F. Supp. 483 (N.D. Ga. 1989); J.R. Brooks & Sons v. Norman's Country Market, 98 B.R. 47 (Bankr. N.D. Fla. 1989). See also 7 U.S.C. § 499e(c)(4). "Injunctive relief is necessary to preserve the status quo for the protection of the produce sellers." Debruyn Produce, 734 F.2d at 486.

Preventing dissipation of the trust is a key purpose of the PACA. Preventing transfer of trust assets often may be the only means by which a Federal Court can prevent dissipation of the trust. Upon a showing the trust is being dissipated or threatened with dissipation, a District Court should require the maintenance of trust assets. Frio Ice, 918 F.2d at 159. See also Strube Celery & Vegetable v. Global Foods, 2006 U.S. Dist. LEXIS 78330 (S.D. IN 2006)(wherein the Court granted injunctive relief to the PACA trust beneficiary in order to stop the defendants continued dissipation of the trust *res* and to maintain the status quo).

## V. **ARGUMENT**

Federal Rule of Civil Procedure 65(b) provides that a temporary restraining order may be issued without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court, in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. FRCP Rule 65(b).

Defendants' dissipation of Plaintiff's PACA trust funds is an immediate and irreparable injury which the Southern District of Indiana has previously held as a valid basis to a plaintiff's entitlement

7

to an immediate injunction to restrain any further dissipation of trust assets when the produce supplier is not paid. See Strube Celery & Vegetable v. Global Foods, 2006 U.S. Dist. LEXIS 78330 *4 (S.D. IN 2006)(citing Tanimura & Antle v. Packed Fresh Produce, 222 F.3d 132, 139-140 (3rd Cir. 2000) ("the dissipation of PACA trust assets can render money damages inadequate"); Frio Ice, supra, 918 F. 2d at 159 ("[u]pon a showing that the trust is being dissipated or threatened with dissipation, a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets.")(emphasis added). Accord Dole Fresh Fruit v. United Banana, 821 F.2d 106 (2nd Cir. 1987); In re: Richmond Produce, 112 B.R. 364, 367 (Bankr. N.D. Cal. 1990)..

Second, granting the TRO *ex parte* is necessary and proper to prevent further dissipation of PACA trust assets. In Taylor Farms Florida v. Gennaro's Produce, 2007 U.S. Dist. LEXIS 13260 (S.D. FL 2007), also involving a PACA creditor requesting an *ex parte* TRO, the District Court addressed the no-notice provision of FRCP 65(b) and stated that:

> [i]f notice is given to Defendants of the pendency of this Motion, trust assets will be further threatened with dissipation before the Motion is heard. As noted in the legislative history of PACA, once dissipation has occurred, recovery of trust assets is all but impossible. Entry of this Oder without notice assures retention of the trust assets under the control of this Court which is specifically vested with jurisdiction over the trust.

Id. at 4. (internal citations omitted). See also Procacci Brothers Sales Group v. Indian Rock Produce, U. S. Dist. Court E.D. Pa. No. 03-5543 (E.D. Pa. October 9, 2003) (Wells, M.J.), similarly involving a PACA creditor requesting an *ex parte* TRO, the Court addressed the no-notice provision of FRCP 65(b), stating in the report that: "[e]x parte proceedings pursuant to FRCP 65(b), are appropriate in this instance, because, once the produce has been sold and trust funds dissipated, there will be no

asset or other reliable source of payment available to the Plaintiff." 2003 U.S. Dist. Lexis 19620 *4

(E.D.Pa 2003 ).   On the same date the report issued, the District Court adopted the report and

entered the TRO as requested.

Plaintiff's Motion for a Temporary Restraining Order should be granted with an Order

providing as follows:

> A.   Restraining the Defendants from further violating the provisions of the PACA through dissipation and establishing a common fund for the payment of all valid PACA claims;
>
> B.   Restraining the Defendants, their principals, agents, banking institutions, or any entity acting on behalf of, or in concert with, the Defendants from using or consuming PACA trust assets in any way until further Order or until the Defendants pay Plaintiff the sum of $46,424.71, plus further interest, costs and attorneys' fees; and
>
> C.   If the Defendants fail to make payment in full to Plaintiff within three (3) business days of entry of this Order, the Defendants are ordered to tender a detailed accounting of all the Company''s accounts receivable, accounts payable, inventory, equipment and other assets by a date certain to the Court and to Plaintiff's counsel for a determination of the extent of the dissipation.

The Southern District of Indiana has found persuasive and thereafter followed the Third

Circuit Court of Appeals prior precedent supports Plaintiffs' entitlement to an immediate injunction

to restrain any further dissipation of trust assets when the produce supplier is not paid. Strube Celery

& Vegetable v. Global Foods, 2006 U.S. Dist. LEXIS 78330 *4 (S.D. IN 2006)(citing Tanimura &

Antle v. Packed Fresh Produce, 222 F.3d 132, 139-140 (3rd Cir. 2000) ("the dissipation of PACA

trust assets can render money damages inadequate"); Frio Ice,, supra, 918 F. 2d at 159 ("[u]pon a

showing that the trust is being dissipated or threatened with dissipation, a district court should

require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and

inventory its assets.")(emphasis added). Accord Dole Fresh Fruit v. United Banana, 821 F.2d 106 (2nd Cir. 1987); In re: Richmond Produce, 112 B.R. 364, 367 (Bankr. N.D. Cal. 1990).

The above-listed preliminary relief is significantly less burdensome than the relief other courts have found necessary to effectuate the purpose of the statute, that being to ensure payment to unpaid sellers of Produce who have properly preserved their rights under the law. See also Gullo Produce, 751 F. Supp. at 65-66.

> [f]our factors must be considered by a court in deciding whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting the preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. . . . A court should endeavor to balance these factors when determining if an injunction should issue.

Tanimura, supra, at 140; William Inglis & Sons Baking v. ITT Continental Baking, 526 F.2d 86 (9th Cir. 1975); Corning Glass Works v. Jeannette Glass, 308 F. Supp. 1321 (D.C. N.Y. 1970), aff'd 432 F. 2d 784 (2nd Cir. 1970). See also See Strube Celery & Vegetable v. Global Foods, 2006 U.S. Dist. LEXIS 78330 *4 (S.D. IN 2006)(citing Faheem-El v. Klincar, 841 F.2d 712 (7th Cir. 1988))). Plaintiff will demonstrate the satisfaction of each condition for temporary and permanent injunctive relief.

## I. **LIKELIHOOD OF SUCCESS ON THE MERITS**

The Affidavit from the Plaintiff's President demonstrates that the Plaintiff properly preserved its trust claim by affixing the required notice language on the face of its invoices and serving same on the Company. See 7 U.S.C. § 499e(c)(4). As a case based almost exclusively on written documents which have been properly authenticated (an "account stated" action), and because the

Defendants have admitted owing the debt and just lacking the ability to pay it, the Plaintiff will almost certainly prevail at any hearing on the merits of its claims.

## 2. **IRREPARABLE INJURY**

In cases interpreting the rights of PACA creditors, courts in other jurisdictions have recognized that without injunctive relief, a PACA seller faced with a financially unstable or an insolvent buyer will not receive either the PACA trust assets _or_ the proceeds of such trust assets. Tanimura, supra. "PACA trust dissipation . . . constitutes irreparable harm." Tanimura, 222 F.3d at 140 (3rd Cir. 2000). See also Gullo Produce, 751 F. Supp. at 67; Frio Ice, 918 F.2d at 159 (*"[t]he legislative history [of the PACA] noted that once the trust is dissipated it is almost impossible for the beneficiary to obtain recovery"*) (emphasis added). "[T]rust dissipation can satisfy [the irreparable harm] factor if, absent such relief, ultimate recovery is rendered unlikely." Tanimura, 222 F.3d at 141 (3rd Cir. 2000). A moving party must show either actual dissipation **OR** the threat of dissipation of the PACA trust in order to obtain injunctive relief and a segregation of the trust proceeds. Frio Ice, 918 F.2d at 159 n.8. In this instance, the Defendants have lacked the ability to pay for the Produce they purchased for several months, despite repeated promises to pay. This clearly establishes either actual dissipation or a clear threat of dissipation of the PACA trust assets unless the Defendants are enjoined from further violating the PACA statute.

Injunctive relief will force the Defendants to cease dissipation of the PACA trust, prevent third party purchasers from terminating or "cutting off" the Plaintiff's trust rights and require the Defendants to return the trust to a fully-funded level sufficient to satisfy the claims of qualified beneficial interests in full. To date, the Defendants have dissipated the trust by failing to pay Plaintiffs, and the Defendants have demonstrated their inability to do so. The Defendants continue

11

to dissipate the trust assets to entities other than the rightful owners of the PACA trust's beneficial interests and by failing to make the trust assets readily available to make "full payment promptly" to Plaintiff as required under federal law (the PACA). Because Congress specifically recognized the virtual impossibility of recovering PACA trust assets once they have been dissipated or transferred to third parties who may have "BFP" status, the loss to Plaintiff and other trust creditors is irreparable.

### 3. BALANCING OF HARM

The Defendants simply cannot be harmed by the issuance of an injunction because the relief Plaintiff seek is merely to force the Defendants to comply with the law. It truly is akin to entering an order requiring the Company to drive the legal speed limit or even more simply, to comply with the law. It will also require the Defendants to satisfy their pre-existing obligations under PACA – that is, to preserve the PACA trust assets for the benefit of PACA beneficiaries and make "full payment promptly" on all Produce-related invoices. On the other hand, the risk of harm to Plaintiff is great if the Defendants are allowed to further dissipate trust assets and disburse the PACA trust assets to non-trust creditors. Judicial oversight is necessary to protect the trust rights of the Plaintiff and other PACA trust beneficiaries. As stated above, previous experience has borne out the fact that, once PACA trust assets are dissipated, an unpaid PACA claimant is extremely unlikely to recover any portion of its beneficial interest in the trust -- a result clearly at odds with the express purpose of this remedial federal statute. Thus, the issuance of a TRO will merely ensure the Defendants do not *continue* to violate the law.

### 4. **PUBLIC INTEREST**

The strong preference for the plight of PACA trust creditors which Congress expressed in the 1984 trust amendments to the PACA clearly illuminates the public interest at stake in this case. In the text of the statute itself, Congress made this point crystal clear:

> [t]his subsection [the new PACA trust provision] is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

7 U.S.C. § 499e(c)(1) (emphasis added). Congress enacted these safeguards in order to assure prompt and full payment to the growers and shippers of Produce. There can scarcely be a more vital public concern than the economic security and viability of this nation's food supply.

This supply and distribution chain consists of the very same growers, producers and distributors which Congress sought to protect when it enacted this legislation in 1930 and then amended it in 1984 to include the PACA trust provisions. To deny Plaintiff the requested relief would be to erode the protection Congress guaranteed to the growers and sellers of Produce in Plaintiff's position, bypassing the PACA and the regulations promulgated thereunder. "[I]ssuance of a preliminary injunction here is in the public interest, as the statutory purpose explicitly encapsulates injunctive relief. Tanimura, 222 F.3d at 140 (3rd Cir. 2000). Therefore, the requested injunction is clearly in the public interest.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to issue a Temporary Restraining Order and set this matter for a full hearing on Plaintiff's motion for a preliminary injunction and to consolidate that hearing with a hearing on the merits. In further support, attached hereto as Group Exhibit 2, please see prior examples of other TROs entered in similar cases.

DATE:   September 24, 2009

Respectfully Submitted,

HARVEST FOOD GROUP, INC.

By: /s/ Michael J. Keaton
One of its Attorneys

Michael J. Keaton, Esq. - IL Bar #6207203
Jason R. Klinowski, Esq. - IL Bar #6283266
KEATON & ASSOCIATES, P.C.
1278 W. Northwest Highway, Suite 903
Palatine, Illinois 60067
Telephone: (847) 934-6500
Facsimile:  (847) 934-6508
keaton@pacatrust.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| HARVEST FOOD GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION |
| | ) |
| OPTIMUM FOOD GROUP, LLC., BROCK | ) Case No. |
| FURLONG, MIKE DAHL and BARRETT | ) |
| CARLSON, each individually, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF PLAINTIFF IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PACA TRUST CLAIM

I, Jason E. Eckert, declare and state as follows:

1.     I am the President of Harvest Food Group, Inc. (the "Plaintiff") and, in such position, I am authorized to make this Affidavit. I am an adult and, based upon my own personal knowledge, I am competent to testify at trial regarding the statements made in this Affidavit. I file this Affidavit in support of the Plaintiff's Application for a Temporary Restraining Order against the defendants, Optimum Food Group, LLC. (the "Company") and Brock Furlong, Mike Dahl and Barrett Carlson, each individually (collectively, the "Principals")(the Principals and the Company are collectively referred to herein as the "Defendants").

2.     The Plaintiff seeks the entry of a Temporary Restraining Order against the Defendants to preserve its interest in the statutory trust created under the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a-499t (2006 & Supp. 2008) (the "PACA"). All of the PACA trust assets are in the custody and control of the Defendants.

EXHIBIT 1

## I.    ACCOUNT HISTORY

3.    The transactions between Plaintiff and the Company were based on payment terms

of the USDA terms of Net Ten (10) days from the date the Defendants accepted each shipment.

4.    Plaintiff sold perishable agricultural commodities (hereinafter "Produce") to the

Company as described in the chart included in attached Exhibit A.  In each instance, the Company

received and accepted the Produce and no adjustments have been made on the invoice amount except

as listed.  This chart uses the following terms which shall have the described meaning:

A.    **"Invoice Number"** refers to the number of the invoice under which that Plaintiff
sold the produce to the Company.

B.    **"Date Of Transaction"** refers to the date which begins the payment term between
that Plaintiff and the Company.

C.    **"Payment Due Date"** refers to the date payment was due based upon the payment
term between that Plaintiff and the Company.

D.    **"Notice Date"** refers to the date that Plaintiff served its invoice containing the
statutory trust language on the Company or, otherwise served its notice of intent to
preserve trust benefits on the Company.

E.    **"Elapsed Days"** refers to the total number of days between the payment due date and
the date that Plaintiff served the trust notice.

F.    **"Invoice Amount"** refers to the amount owed on each invoice regardless of whether
the particular invoice amount qualifies for trust protection.

G.    **"Partial Payments"** refers to any payments made or credits allowed against the
Invoice Amount

H.    **"Balance Due"** refers to amount still due and owing on the referenced unpaid
invoice.

I.    **"Accrued Interest"** refers to the interest due on past due invoices at the interest rate
agreed between the parties or as State law directs pursuant to statute.

J.    **"Invoice Total"** refers to the total sum due under all terms of the parties' contracts.

K.    **"Trust Amount"** refers to the amount owed and remaining unpaid which has been
properly preserved as a trust claim under the applicable PACA regulations.

5.    Included in Exhibit A are true and accurate copies of all unpaid invoices containing

the required trust preservation language and all related supporting documentation.

2

6.     Plaintiff has given the Company credit for any and all payments against the full amount of this claim as stated in the chart attached in Exhibit A and the chart reflects the amount due and owing from the Company to the Plaintiff as of the date listed.

## II.     PRESERVATION OF BENEFICIAL INTEREST IN TRUST

7.     Plaintiff issued written notices of its intent to preserve trust benefits to the Company in accordance with the PACA Amendments of 2005 by including on each invoice the trust preservation language required under the statute as amended. All of the invoices supporting the Plaintiff's claim in this action, which now serve as the required notice of intent to preserve trust benefits, are attached hereto as part of Exhibit A.

8.     On each of the dates listed in the chart under "Notice Date," Plaintiff served the corresponding unpaid invoice contained in Exhibit A during its regular course of business on the Company, via U.S. Mail, by depositing each such invoice in the U.S. Mail, at Warrenville, Illinois with appropriate postage prepaid and in an envelope addressed to the Company as follows: Optimum Food Group, 2900 Shermer Road, Northbrook, IL 60062.

9.     At all relevant times hereto, the Plaintiff operated its business under a valid PACA license from the United States Department of Agriculture, Agricultural Marketing Service, PACA Branch, Fruit & Vegetable Division.

10.     The Produce the Plaintiff sold to the Company consisted of fresh or frozen fruits or vegetables, each of which are the type of Produce commonly shipped in interstate commerce and, accordingly, subject to the provisions of the PACA.

11.     The Defendant has not paid the invoices in accordance with the applicable USDA payment terms of Net Ten (10) days and, upon the Company's own admissions, it lacks the ability

3

to fully satisfy Plaintiff's PACA trust claims in full, as required under the PACA. This dissipation

of the trust is most commonly due to the Defendants' diversion of PACA trust assets to the claims

of other creditors which are subordinate to properly preserved PACA trust claims such as the

Plaintiff's own claim asserted herein.

**III.    EVIDENCE OF TRUST DISSIPATION**

12.    Beginning with the Company's inability to satisfy the Plaintiff's PACA trust claims

within the agreed credit terms, the Plaintiff and its counsel began investigating the Defendants'

financial position.

13.    This inquiry led to my discovery the Company is in financial difficulty and wholly

incapable of demonstrating the "dollar-for-dollar" funding in the PACA trust as required under the

PACA.

14.    The Company was a new customer account as of late May 2009. The Company

placed a large order for Produce with the Plaintiff and agreed to pay within the Plaintiff's stated

credit terms of Net 10 Days.

15.    My contact at the Company had always been Rusiana Bondar, the Company's

Material/Production Coordinator.

16.    In late June of 2009, I first noticed the Company's account was past due and re-

checked the Company's credit rating. I noticed the Company recently had their credit rating revised

downward in the past month and one of the credit references the Company listed were now reporting

payments as "slow, 21+ days with $78,000 past due."

17.    On July 30, 2009, the Company was 42 days beyond the stated credit terms of Net

10 Days and we spoke with Isabella Ext 228 in the Company's accounts payable department. When

4

we asked Isabella "Why aren't you paying this invoice?", she replied "We grew so fast that we're having some capital issues, but we are optimistic about getting some financing. I should have an answer for you by this Friday."

18.      In August of 2009, I began making weekly calls to the Company to find out why they were still not paying the Plaintiff's account balance. After getting no return calls, I stepped up my efforts to get the Plaintiff's invoices paid to include a call nearly every day.

19.      On August 19, 2009, I sent the Company a letter confirming the Plaintiff held properly preserved PACA trust rights against the Company and demanded payment again. See Exhibit B (copy of letter).

20.      On Friday, September 4, 2009, I placed a telephone call to the Company's regular listed business telephone number and spoke with Brock Furlong, the Company's CEO.

21.      In this telephone call, I stated "Brock, we need to get paid on this. We are a small, family owned business here and I cannot afford to be your bank." Mr. Furlong replied "OK, let's talk on Monday and we will take care of this then." Monday was Labor Day, so I called the Company on Tuesday, September 8 and was forced to leave a message for Mr. Furlong.

22.      After receiving no return call from Mr. Furlong, I called his office every business day for at least seven (7) days in row following September 8, 2009. To this day, I have received no return call or any kind of response from Mr. Furlong or anyone else at the Company.

23.      On September 11, 2009, I sent the Company's main secured lender a letter advising the Bank of how the Plaintiff's PACA trust rights came ahead of the Bank's liens and threatened Court action against the Company if the past account balance was not paid immediately. See Exhibit C (copy of letter). Once again, the Company simply refused to respond in any way.

5

24.     The Company continues to take orders for its finished goods and continues to place orders for Produce from other Produce suppliers.

25.     On information and belief, some or all of the Company's operating accounts are held at Fifth Third Bank (the "Bank"). Such accounts contain the proceeds of the Company's transactions in Produce, which clearly meet the statutory definition of assets subject to the PACA trust.

26.     With the Company's PACA trust in a deficient condition, the Plaintiff's trust claim will be prejudiced if a junior creditor, such as the Bank, payroll and wage claimants, equipment lessors, utility company or any other third party were to receive a check or obtain any other interest in the PACA trust assets, because that creditor could then claim bona fide purchaser ("BFP") status to cut off the Plaintiff's trust rights in those same funds.

27.     Through its actions and admissions of its Accounts Payable manager, the Company has admitted the PACA trust, under the exclusive control of the Defendants, is clearly incapable of satisfying the debts owed to the PACA trust's beneficiaries, such as the Plaintiff.

28.     As the Company is continuing to operate, the Principals are clearly continuing to dissipate the PACA trust assets by sending the proceeds of Produce transactions to other creditors like its Bank, equipment lessors, other secured lenders, landlord, utilities and payroll obligations.

29.     Unless the PACA trust assets in the Defendants' control are frozen, there is a very real and imminent danger of the PACA trust assets being dissipated even further, including, but not limited to, other non-PACA creditors who may be able to thwart the senior interests of the unpaid PACA trust beneficiaries such as the Plaintiff. As a result, the Plaintiff will suffer immediate and irreparable harm because it will forever lose the remaining PACA trust assets and its rights as a PACA trust beneficiary.

6

## IV.    CONCLUSION

30.    Based on the Company's repeatedly failures to promptly satisfy its PACA trust obligations, as well as the Company's admitted inability to do so, it has become clear the Defendants have breached their statutory and fiduciary obligations to maintain "dollar-for-dollar" funding in the PACA trust.

31.    Every dollar which is allowed to be paid out to non-trust creditors, such as the equipment lessors, secured lenders, payroll obligations, landlord, utilities, other non-trust creditors and the Principals' own salaries and disbursements, will irreparably prejudice the trust beneficiaries, such as the Plaintiff, because such creditors may be able to claim BFP status to cut off the Plaintiff's rights and those of similarly situated PACA trust beneficiaries to recover those trust assets.

32.    Based on my 13+ years of experience in the Produce industry, the last ten (10) years of which has been in an executive management role, I have found that when a situation has deteriorated this much, it has inevitably led to the liquidation of the entity charged with maintaining the PACA trust.

33.    My experience has also proven such dissipation will undoubtedly continue until any hope of recovery is lost, thereby rendering the trust protection under the PACA a meaningless formality.

   **I declare the above statements to be true and correct under penalty of perjury
   that the foregoing is true and correct as set forth in 28 U.S.C. § 1746.**

DATE: September 24, 2009

                                        Jason E. Eckert
                                        Jason E. Eckert

## PACA TRUST CHART

**Claimant:** Harvest Food Group, Inc.
**Date:** 09/24/09

**Debtor:** Optimum Food Group
**Terms:** Net 10 + 1.5% per mo. interest + atty fees

| INVOICE NUMBER | DATE OF TRANS. | PAYMENT DUE | NOTICE DATE | ELAPSED DAYS | INVOICE AMOUNT | PARTIAL PAYMENTS | BALANCE DUE | ACCRUED INTEREST* | INVOICE TOTAL | TRUST AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| 10434 | 06/08/09 | 06/18/09 | 06/08/09 | 98 | $ 35,240.00 | $ - | $ 35,240.00 | $ 1,609.71 | $ 36,849.71 | $ 36,849.71 |
| ** Collection Costs | | | | | | | | | | $ 9,575.00 |
| | | | | | | | | | | |
| TOTALS | | | | | $ 35,240.00 | $ - | $ 35,240.00 | $ 1,609.71 | $ 36,849.71 | $ 46,424.71 |

* Interest calculated through the date set forth above
** Collection costs estimated through September 25, 2009

Group Exhibit A



# HARVEST FOOD GROUP, INC.
30W260 BUTTERFIELD RD.
Suite #201
WARRENVILLE, IL 60555
Phone: 630-821-4003 Fax: 630-821-4004

Website: www.harvestfoodgroup.com

## PAST INVOICE

**Accounting Copy**

| | |
|---|---|
| Number | 010434 |
| Date | 06/08/2009 |
| Page | 1 |

| Bill To: 358 | Optimum Food Group 2900 Shermer Rd. Northbrook, IL 60062 | Ship To: SAME | Optimum Food Group 2900 Shermer Rd. Northbrook, IL 60062 |
|---|---|---|---|

| Reference # | Shipped | Salesperson | Terms | Tax Code | Doc # | Wh | Freight | Ship Via |
|---|---|---|---|---|---|---|---|---|
| 2064 | 06/08/09 | Peter Murray | Net 10 days | 001 | 011439 | 06 | PREPAID | Schmidt Truck |

| Item | Description | Pack Size | Cases | Shipped | UM | Price | UM | Extension |
|---|---|---|---|---|---|---|---|---|
| ART-DIFR-0040 | IQF 3/8" Diced Artichokes Fire Roasted, 1/40 | 1/40 | 200 | 8000.00 | LB | 4.1800 | LB | 33440.00 |
| BLB-BLCK-0020 | Beans-Black IQF 1/20 Lot# C011X9A20 JIJJ12299-6366 ORDER PICKED BY JR TUB 0005 | 1/20 | 100 960.00 1040.00 | 2000.00 | LB | .9000 | LB | 1800.00 |

The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5C of the perishable agricultural commodities ACT. 19307 U.S.C 499E(C). The seller of these commodities retains a trust claim over these commodities. All inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. Any claims of shortage, damage or condition will not be honored unless the problem is reported in writing to the seller within 3 days of the receipt of the product.

Past due invoices shall accrue interest at the rate of 1.5% per month (18% per annum).

If overdue accounts are referred to an attorney, you agree to pay our attorney's fees plus the cost of all legal action as an additional charge under the contract of sale covered by this invoice.

| Merchandise | Misc | Discount | Tax | Freight | Total Due |
|---|---|---|---|---|---|
| 35240.00 | .00 | | | .00 | 35240.00 |



# Harvest Food Group, Inc

Phone (630) 821-4003 Fax (630) 821-4404 30W260 Butterfield Rd., Suite 201, Warrenville, IL 60555

Optimum Food Group
2900 Shermer Rd.
Northbrook, IL 60062

August 19, 2009

**Subject: Notice of Intent to Preserve USDA PACA Trust Benefits**

As a matter of standard practice when our customer's accounts become delinquent, we must inform them of our intent to preserve trust benefits in accordance with the Perishable Agricultural Commodities Act of 1930 (PACA). Since your account is now severely past its due date, the attached documents serve that purpose for the following invoice(s):

| Invoice # | Invoice Date | Amount | Credits | Balance |
|---|---|---|---|---|
| 10434 | 6/8/2009 | $35,240.00 | $ - | $35,240.00 |
| | | | **Total** | **$35,240.00** |

Each invoice notified you of the information listed above and informed you of our intent to preserve PACA Trust Benefits. Please find enclosed copies of the invoice(s) containing the PACA notice along with the completed "Notice of Intent to Preserve PACA Trust Benefits" for each invoice pursuant to the Perishable Agricultural Commodities Act.

This is in no way intended to be threatening and is merely a business practice securing our financial position so that we may continue to provide all of our customer's consistent, high quality food products at a fair price. However, we would appreciate prompt payment upon receipt of this notice.

If you have any questions or information regarding this filing, please contact our Accounts Receivable department at (630) 821-4003.

Respectfully,
Harvest Food Group, Inc.

Sharon Wanner
Controller
PH: 630-821-4003 ext 22
sharon@harvestfoodgroup.com

**EXHIBIT B**

Friday, September 11, 2009

Scott Mier
Fifth Third Bank
10 S. Wacker Drive
Chicago, IL 60606



Re: Optimum Food Group, LLC
     Accounts: 7234894587 , 7234894579

Dear Mr. Mier,

Optimum Food Group, LLC (the "Debtor") is in breach of the trust provisions of the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. 499a-499s, as amended (2001 & Supp. 2003) (the PACA). Among other breaches of its duties under the PACA, the Debtor failed to pay invoices relating to qualified transactions in the current amount of $35,240.00. After properly preserving our rights as a trustee beneficiary, our company Harvest Food Group, Inc. ("Harvest") now holds a "perfected" PACA trust claim for this entire amount, plus interest and costs. In addition, the Debtor may owe significant more to the holders of other properly preserved PACA trust claims.

Under both the PACA and current case law interpreting this statute, the PACA trust includes all of the Debtor's assets which it cannot prove were acquired either prior to the Debtor's first transaction qualifying goods or which were acquired with non-PACA trust assets. Such assets specifically include any and all cash or cash equivalents held in any accounts in which the Debtor has an interest, its inventory, accounts receivable, the products and proceeds of any of the foregoing, as well as any and all assets with which PACA trust assets have been commingled. See In re Atlantic Tropical Market, 118 B.R. 139, 142 (Bankr. S.D. Fla. 1990) ("should a dispute arise, it will be the debtor's burden to establish which, if any, assets are not subject to the PACA trust"); In re Richmond Produce, 112 B.R. 364, 368 (N.D. Cal 1990) ("[t]he unpaid sellers are not required to trace and the trust arises immediately upon delivery.").

The PACA impresses the trust on these assets for the benefit of the PACA trust beneficiaries, and equitable title rests with those beneficiaries. Accordingly, and until Harvest and other similarly-qualified trust beneficiaries are paid in full, the receipt of any PACA trust assets by Optimum Food Group, LLC is in violation of the PACA and such assets must be returned to the trust beneficiaries. Under the PACA, the trust assets belong to the PACA trust beneficiaries and not to the Debtor as a secured creditor of the account debtor. By its very nature, any lien Optimum Food Group, LLC may claim can only extend to the account debtor's assets. Any such lien can have no effect on a PACA trust beneficiary's right to the corpus of the PACA trust because such assets never became the account debtor's property. The account debtor merely holds these assets on behalf of their true owner, the PACA trust beneficiaries, until such time as the assets can be converted to cash and the funds remitted to the seller of the PACA qualifying goods.

**EXHIBIT C**

In the interim, the account debtor continues in its role as a trustee with the attendant fiduciary duties being owed to the beneficiaries of the PACA trust. Based on its failure to remit the funds due and owing to Harvest Food Group, the Debtor has breached its duties as the trustee of the PACA trust and has violated the provisions of the PACA. This being the case, Optimum Food Group, LLC is hereby put on notice that any all PACA trust assets Optimum Food Group, LLC has received or may receive from the Debtor must be immediately segregated, accounted for and returned to the PACA Trust beneficiaries, until there are sufficient funds to fully satisfy all qualified PACA claims. This written notice of breach of trust is sufficient to undermine Optimum Food Group, LLC status as a bona fide purchaser for value, the only defense to liability for either the receipt of, or participation in the dissipation of, a collection of funds which are now known to be PACA trust assets. See C.H. Robinson v. Turst Co. Bank, 952 F 2d 1311, 1315 (11th Cir. 1992). With such notice, the fiduciary duties of the account debtor are now applicable to the extent it obstructs the turnover of the PACA trust assets in its possession the PACA trust beneficiaries or otherwise continues clearing the Debtor's checks to non-trust creditors, thus permitting the Debtor to continue dissipating theses trust assets.

Harvest remains interested in working out an amicable arrangement whereby Optimum Food Group, LLC would agree to segregate and account for any and all PACA trust assets in its possession and deposit such funds into an interest bearing escrow account established for the benefit of all PACA trust beneficiaries. If we fail to reach such an agreement, we have authorized the filing of a complaint in the District Court seeking both injunctive relief and recovery of all PACA trust assets. This order will prevent any further dissipation of the PACA trust and force all third parties, including the Bank if necessary, to recompense the trust beneficiaries for all funds which were dissipated after the Bank had actual or constructive notice of the dissipated condition of this express statutory trust.

Should you with to discuss these matters, or if you have any questions, please do not hesitate to call. Notwithstanding the urgency normally, and understandably, attending these situation, I look forward to discussing these issues with you at your earliest convenience.

Sincerely,

Jason Eckert
President
Harvest Food Group, Inc.
30 W. 260 Butterfield Road Suite 201
Warrenville, IL 60555
Phone: 630-821-4003
Fax: 630-821-4004

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CLASSIC SALADS, LLC, and PRIDE OF )
SAN JUAN, INC., )
)
           Plaintiffs, )  CIVIL ACTION
)
    v. )  Case No. 09-CV-737
)
S&M PRODUCE, INC., DONALD J. )
MIDED, and LANCE K. MIDED, each )
individually, )
)
           Defendants. )

## TEMPORARY RESTRAINING ORDER

Plaintiffs' Application for the issuance of a Temporary Restraining Order under Federal Rules

of Civil Procedure 65(b) (the "Application") came before this Court and the undersigned on the date

set forth below. The Court considered the Application, the Affidavit of Chris L. Thomas and all

related moving papers. The Court also considered the certificate of Plaintiff's counsel setting forth the

reasons why Plaintiff believes that a Temporary Restraining Order should issue without notice to

Defendants, as permitted in certain circumstances under Rule 65(b). The Plaintiff's Affidavit

demonstrates defendants, S&M Produce, Inc. (the "Company") and Donald J Mided and Lance K.

Mided, each individually, (the "Principals") (Company and the Principals are collectively referred

to herein as the "Defendants") purchased perishable agricultural commodities ("Produce") in interstate

commerce from the Plaintiffs and, thereafter, failed to pay the Plaintiffs in violation of the Perishable

Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a-499t (2007 & Supp. 2008) (the "PACA").

These same pleadings and supporting documents establish that the Defendants have either

dissipated the PACA trust or have presented a sufficient threat of dissipation of such trust to warrant

**EXHIBIT 2**

the relief granted in this Order. On the basis of the pleadings, Affidavit and other submissions the Plaintiffs filed in this matter, it appears to this Court that the Plaintiffs will suffer immediate and irreparable injury due to the Defendants' dissipation of Plaintiffs' beneficial interest in the statutory trust created pursuant to 7 U.S.C. § 499e(c) and that such dissipation will continue in the absence of injunctive relief. The Court is of the opinion that a Temporary Restraining Order should be issued without notice thereof due to the threat of further dissipation that such notice might allow.

Based on the foregoing, **IT IS HEREBY ORDERED:**

1.      Defendants, S&M Produce, Inc., Donald J. Mided and Lance K. Mided, each individually, as well as their respective agents, attorneys, officers, assigns, and any of their banking institutions must not pay, withdraw, transfer, assign or sell any and all existing PACA trust assets or otherwise dispose of corporate or personal assets to any creditors, persons or entities until further Order for this Court or until Defendants deposit into the Registry of this Court the current aggregate sum of $104,541.84.

2.      Pending further orders of this Court, or until such time as Defendants deposit into the Registry of this Court the current aggregate sum of $104,541.84, no banking or financial institution holding funds for any Defendant shall pay, transfer or permit assignment or withdrawal of any existing PACA Trust Assets, including, but not limited to, the corporate or personal assets of these Defendants.

3.      If Defendants fail to deposit into the Registry of this Court the aggregate sum of $104,541.84 in full within three (3) business days of the entry of this Order, the Defendants must account to the Court and the Plaintiffs' counsel for all accounts receivable, accounts payable, equipment, inventory and all other assets subject to the PACA trust and the regulations promulgated thereunder.

2

4. In furtherance of such an accounting, the Court hereby directs any banking institution holding funds for any of the Defendants to turn over to Plaintiffs' counsel any statements, signature cards and other documents relating to or regarding any of the Defendants' accounts at such banking institutions within five (5) days of receipt of this Order.

5. The Defendants, their agents, employees, successors, banking institutions, attorneys and all persons in active concert and participation with Defendants shall immediately turn over to the registry of the Court any and all assets derived from the Defendants' sale of Produce or other assets impressed with the PACA trust.

6. This Order will be binding upon the parties to this action, their officers, agents, servants, employees, banks or attorneys and all other persons or entities who receive actual notice of this Order by personal service or otherwise. In this regard, within three (3) business days of the entry of this Order, the Defendants shall serve a copy of this Order on all financial institutions with which any of the Defendants does any business, may do any business with or who may be holding any assets for or on behalf of any of the Defendants.

7. Because Defendants already possess $104,541.84 of PACA trust assets which are the Plaintiffs' property, the bond in this matter is hereby set at $0.00.

8. A Preliminary Injunction Hearing is hereby set for February 19, 2009 at 9:15AM in Courtroom 1919 of the United States District Court for the Northern District of Illinois, in Chicago, Illinois.

9. Plaintiffs, through their Counsel, shall serve a true and correct copy of this Order on all Defendants including their respective counsel, if known.

3

DATE: February 13, 2009
9:50 am

ENTER:

_____

Hon. Robert M. Dow, Jr.
UNITED STATES DISTRICT JUDGE

4

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UPTOWN PRODUCE CONNECTION, INC., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | **08CV3660** |
| ) | **JUDGE NORGLE** |
| TRI-COUNTY PRODUCE, INC. and ) | **MAGISTRATE JUDGE NOLAN** |
| ANGELO MARANO, DAVID MARANO, ) | |
| and PATRICIA MARANO, each individually, ) | |
| ) | |
| Defendants. ) | |

## TEMPORARY RESTRAINING ORDER

Plaintiff's Application for the issuance of a Temporary Restraining Order under Federal Rules of Civil Procedure 65(b) (the "Application") came before this Court and the undersigned on the date set forth below. The Court considered the Application, the Affidavit of David P. Block and all related moving papers. The Plaintiff's Affidavit demonstrates defendants, Tri-County Produce, Inc. (the "Company"), Angelo Marano, David Marano and Patricia Marano, each individually, (collectively the "Principals")(the Principals and the Company are collectively referred to herein as the "Defendants"), purchased perishable agricultural commodities ("Produce") in interstate commerce and, thereafter, failed to pay the Plaintiff in violation of the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a-499t, as amended (2004 & Supp. 2006) (the "PACA").

These same pleadings and supporting documents establish that the Defendants have either dissipated the PACA trust or have presented a sufficient threat of dissipation of such trust to warrant the relief granted in this Order. On the basis of the pleadings, Affidavit and other submissions the Plaintiff filed in this matter, it appears to this Court that the Plaintiff will suffer immediate and irreparable injury due to the Defendants' dissipation of Plaintiff's beneficial interest in the statutory

trust created pursuant to 7 U.S.C. § 499e(c) and that such dissipation will continue in the absence of injunctive relief. The Court is of the opinion that a Temporary Restraining Order should be issued without notice thereof due to the threat of further dissipation that such notice might allow.

Based on the foregoing, **IT IS HEREBY ORDERED:**

1.      Defendants, Tri-County Produce, Inc., Angelo Marano, David Marano and Patricia Marano, each individually, and their respective agents, attorneys, officers, assigns, and any of their banking institutions must not pay, withdraw, transfer, assign or sell any and all existing PACA trust assets or otherwise dispose of corporate or personal assets to any creditors, persons or entities until further Order for this Court or until Defendants deposit into the Registry of this Court the current aggregate sum of $23,918.77.

2.      Pending further orders of this Court, or until, such time as Defendants deposit into the Registry of this Court the current aggregate sum of $23,918.77, no banking institution holding funds for any Defendant shall pay, transfer or permit assignment or withdrawal of any existing PACA trust assets held on behalf of Defendants. Further, pending further order of this Court, or until such time as Defendants deposit into the Registry of this Court the sum of $23,918.77, no banking institution holding funds for any Defendant shall pay, transfer or permit assignment or withdrawal of the corporate or personal assets of any Defendants without this Court's express written approval.

3.      If Defendants fail to deposit into the Registry of this Court the sum of $23,918.77 in full within three (3) business days of the entry of this Order, the Defendants must account to the Court and the Plaintiff's counsel for all accounts receivable, accounts payable, equipment, inventory and all other assets subject to the PACA trust and the regulations promulgated thereunder.

4.      In furtherance of such an accounting, the Court hereby directs any banking

2

institution holding funds for any of the Defendants to turn over to Plaintiff's undersigned counsel any statements, signature cards and other documents relating to or regarding any of the Defendants' accounts at such banking institutions within five (5) days of receipt of this Order.

5.     The Defendants, their agents, employees, successors, banking institutions, attorneys and all persons in active concert and participation with Defendants shall immediately turn over to the registry of the Court all assets impressed with the PACA trust.

6.     This Order will be binding upon the parties to this action, their officers, agents, servants, employees, banks, or attorneys and all other persons or entities who receive actual notice of this Order by personal service or otherwise.  In this regard, within three (3) business days of the entry of this Order, the Defendants shall serve a copy of this Order on all financial institutions with which any of the Defendants does any business, may do any business with or who may be holding any PACA trust assets for or on behalf of any of the Defendants.

7.     Because Defendants already possess $23,918.77 of PACA trust assets which are the Plaintiff's property, the bond in this matter is hereby set at $0.00.

8.     A ~~Preliminary Injunction~~ *STATUS* Hearing is hereby set for July ___/___ , 2008 at _10:00_ A.M. in Courtroom _2341_ of the United States District Court for the Northern District of Illinois, in Chicago, Illinois.

9.     Plaintiff, through its Counsel, shall serve a true and correct copy of this Order on all Defendants including their respective counsel, if known.

DATE:  *6-26-08*

ENTER:

UNITED STATES DISTRICT JUDGE

A TRUE COPY-ATTEST
MICHAEL W. DOBBINS, CLERK

BY_____
DEPUTY CLERK
U.S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS

DATE:_____JUN 2 6 2008_____

3

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

BERNARDI & ASSOCIATES, INC., and DE   )
BRUYN PRODUCE CO.,   )
  )
      Plaintiffs,   )
  )
  )
     v.   )   Case No.
  )
RLB GROWERS & SHIPPERS, LLC, an   )
Indiana limited liability corporation; and   )   **3 : 07-cv- 110-RLY-WGH**
ROGER L. BURDEN, individually, and   )
CLARA MARIA BURDEN, individually,   )
  )
      Defendants.   )

## TEMPORARY RESTRAINING ORDER

Plaintiffs' Application for the issuance of a Temporary Restraining Order under Federal

Rules of Civil Procedure 65(b) (the "Application") came before this Court and the undersigned

on the date set forth below. The Court considered the Application, the Affidavit of Alejandro

Leon and all related moving papers. The Plaintiffs' Affidavit demonstrates defendants, RLB

Growers & Shippers, LLC (the "Company"), Roger L. Burden and Clara Maria Burden, each

individually (collectively the "Principals")(the Principals and the Company are collectively

referred to herein as the "Defendants"), purchased perishable agricultural commodities

("Produce") in interstate commerce and, thereafter, failed to pay the Plaintiffs in violation of the

Perishable Agricultural Commodities Act, 1930, 7 U.S.C. §§ 499a-499t, as amended (2004 &

Supp. 2006) (the "PACA").

These same pleadings and supporting documents establish the Defendants either have

dissipated the PACA trust or have presented a sufficient threat of dissipation of such trust to

warrant the relief granted in this Order. On the basis of the pleadings, Affidavit and other

submissions the Plaintiffs filed in this matter, it appears to this Court that the Plaintiffs will suffer immediate and irreparable injury due to the Defendants' dissipation of Plaintiffs' beneficial interest in the statutory trust created pursuant to 7 U.S.C. § 499e(c) and that such dissipation will continue in the absence of injunctive relief. The Court is of the opinion that a Temporary Restraining Order should be issued, without notice thereof due to the threat of further dissipation that such notice might engender.

Based on the foregoing, **IT IS HEREBY ORDERED:**

1.      Defendants, RLB Shippers & Growers, LLC, its principals Roger L. Burden and Clara Maria Burden, each individually, and their respective agents, attorneys, officers, assigns, and any of their banking institutions must not pay, withdraw, transfer, assign or sell any and all existing PACA trust assets or otherwise dispose of corporate or personal assets to any creditors, persons or entities until further Order for this Court and after such time as the Defendants pay Plaintiffs the current aggregate sum of $42,169.34.

2.      Pending further orders of this Court and after such time as Defendants pay Plaintiffs the current aggregate sum of $42,169.34, no banking institution holding funds for any Defendant shall pay, transfer or permit assignment or withdrawal of any existing PACA trust assets held on behalf of Defendants. Further, pending further orders of this Court and after such time as Defendants pay plaintiffs the current aggregate sum of $42,169.34, no banking institution holding funds for any Defendant shall pay, transfer or permit assignment or withdrawal of the corporate or personal assets of any Defendant without the express written approval of this Court having first been obtained.

3.      Within three (3) business days of the entry of this Order, the Defendants must

2

account to the Court and the Plaintiffs' counsel for all accounts receivable, accounts payable, equipment, inventory and all other assets subject to the PACA trust and the regulations promulgated thereunder.

4. The Defendants, their agents, employees, successors, banking institutions, attorneys and all persons in active concert and participation with Defendants shall immediately turn over to the registry of the Court all assets impressed with the PACA trust.

5. This Order will be binding upon the parties to this action, their officers, agents, servants, employees, banks, or attorneys and all other persons or entities who receive actual notice of this Order by personal service or otherwise. In this regard, within three (3) business days of the entry of this Order, the Defendants shall serve a copy of this Order on all financial institutions with which either of the Defendants does any business, may do any business with or who may be holding any assets for or on behalf of any of the Defendants. The Defendants, within three (3) business days of the entry of this Order, shall further serve a copy of this Order on all of the Company's produce vendors/suppliers and otherwise notify said vendors/suppliers of the instant action.

6. Because Defendants already possess $42,169.34 of PACA trust assets which are the Plaintiffs' property, the bond in this matter is hereby set at $0.00.

7. A Preliminary Injunction Hearing is hereby set for ~~August~~ SEPT $21^{th}$, 2007 at $10$ A.m. ~~A~~.M. in Courtroom _____ of the United States District Court for the Southern District of Indiana, in Evansville, Indiana.

8. Plaintiffs, through its Counsel, shall serve a true and correct copy of this Order on all Defendants including their respective counsel, if known.

3